In re John E. MAYER, a/k/a John E. Mayer and Associates, and Deborah Jean Mayer, Debtors.

BANK ONE–ROCKFORD, N.A., Plaintiff–Appellee,

v.

John MAYER and Deborah Mayer, Defendants–Appellants.

No. 94 C 3442.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 31, 1994.

Gloria E. Block, Chicago, IL, for plaintiff-appellee.

Kenneth A. Michaels, Jr., Chicago, IL, for defendants-appellants.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

John and Deborah Mayer (individually "John" and "Deborah" and collectively "Mayers") have appealed from an April 21, 1994 Revised Judgment Order (the "Order") entered by Bankruptcy Judge Eugene Wedoff in an adversary proceeding brought by Bank One—Rockford, N.A. ("Bank One") in the Bankruptcy Court for this District.[1] For the reasons stated in this memorandum opinion and order, the Order is affirmed.

#### Background

In December 1987 Bank One loaned Mayers $136,552 to purchase the Bess Hotel, a hotel for transients in downtown Rockford, Illinois. Mayers executed a note secured by a mortgage on the property, promising to repay the loan plus interest in monthly installments. Both the note and mortgage specified that in the event of default Mayers would pay all reasonable attorneys' fees and

---

1. That adversary proceeding was No. 92 A 1296. John's bankruptcy filing bore No. 92 B 1010, while Deborah's carried No. 92 B 6155.

other costs incurred by Bank One in collecting the outstanding debt.

Mayers quickly fell behind in their payments, and in December 1988 Bank One instituted a foreclosure action in the Circuit Court for the 17th Judicial Circuit, Winnebago County. After fully 2½ years (!) of litigation, on June 28, 1991 Mayers were ordered to pay Bank One $239,612.26, comprising $136,235.89 in principal amount, $47,366.34 in interest, $43,851.50 in attorneys' fees, and $12,158.53 in miscellaneous costs and expenses. After credit was given for the proceeds of the foreclosure sale of the Bess Hotel, on January 3, 1992 a deficiency judgment was entered against Mayers in the amount of $187,665.35.

### Bankruptcy Proceedings

Bank One's efforts to collect its judgment were stymied on January 16 and March 16, 1992, when John and Deborah respectively filed for bankruptcy. Bank One then brought an adversary proceeding against Mayers in Bankruptcy Court, seeking to have the Circuit Court judgment declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A).[2] Bank One alleged that Mayers had acted as a front for another couple, Donald and Rosemarie Monti (individually "Donald" and "Rosemarie" and collectively "Montis"), who were the real parties in interest throughout the Bess Hotel transaction. Assertedly Mayers thus came within the "false pretenses, a false representation, or actual fraud" provision of Section 523(a)(2)(A).

After the adversary proceeding was at issue, Judge Wedoff conducted a bench trial in July 1993. What follows is an account of the trial testimony.

Bank One loan officer Marilyn Seinwill ("Seinwill") testified that John, who had previously not been a Bank One customer (Tr. 43–44), had called her in March 1987 to inquire about a loan for the Bess Hotel (Tr. 13–14). Seinwill responded by telling John that she would need an appraisal and certain financial information (Tr. 15).

In November 1987 Seinwill received the Mayers' 1984 and 1985 tax returns and the couple's personal financial statements that had been signed by John on January 30 and again on November 2, 1987 (Tr. 17; P.Ex. 1). Those financial statements disclosed that John was a clinical psychologist with an annual income in excess of $150,000, while Deborah's occupation was listed as "Homemaker" with a reported income of zero. Mayers' listed net worth as of December 31, 1986 was approximately $800,000. Seinwill was concerned lest the Bess Hotel would not be able to meet its cash flow obligations, and in a second phone conversation John assured her that he would subsidize hotel operations with his personal income (Tr. 18–19, 28–29).

Bank One and Mayer closed the loan on December 11, 1987 (Tr. 27). Both the note and mortgage were pre-signed by John and Deborah before a notary public on December 4, 1987 (Tr. 27–28; P.Ex. 5). Although Mayers later denied that those were in fact their signatures, that position was fully litigated and decided against them in the foreclosure proceeding (Tr. 42; P.Ex. 15 ¶ 3).[3] Seinwill also described Bank One's collection efforts once Mayers' account became delinquent (Tr. 34–42).

Donald testified to a deal that had been struck during a dinner attended by Donald, Rosemarie, John and Deborah in early March 1987 (Tr. 60–62). Mayers and Montis were very close friends (Tr. 63), and Rosemarie and Deborah were not only first cousins but were "inseparable," seeing each other every day at the stable where they rode horses together (Tr. 58, 63–64). John owed Montis approximately $50 to 60,000 as the result of a prior real estate investment (Tr. 59–60).

At the March 1987 dinner Donald agreed to forgive $35,000 of the existing debt if John would secure a loan and mortgage for the Bess Hotel (Tr. 61). Montis would have had

---

2. All further references to the Bankruptcy Code will take the form "Section—," referring to Title 11's statutory numbering.

3. Thus issue preclusion (*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1989)) bars Mayers from relitigating the issue here.

great difficulty in securing the loan themselves because Donald was in bankruptcy and Rosemarie had no credit record (Tr. 62, 73–75). Consistently with their being the real parties in interest, Donald and Rosemarie agreed to manage the property and to repay the loan (Tr. 61–62).

Eventually the terms of the Montis–Mayers agreement were set out in one of two powers of attorney introduced into evidence (Tr. 5, 64–65; P.Ex. 7). Seinwill admitted that document would have been a "red flag" if she had been aware of it, but she testified that she saw it for the first time during the foreclosure proceeding—long after the loan transaction itself (Tr. 56–57).

John's version was entirely different from Seinwill's and Donald's: He testified that he had no knowledge of the loan transaction at all and never realized that the Bess Hotel was his responsibility (Tr. 9–10, 78). According to John, when he received mail from Bank One he would give it to his wife to pass along to Rosemarie (Tr. 79). And John testified that when he received messages from Seinwill on his answering machine, he would call Donald to tell him that "someone from Rockford" had called regarding what he assumed to be an unrelated real estate deal (Tr. 79).[4]

Judge Wedoff found that Bank One had proved by a preponderance of the evidence "that Mr. Monti and Dr. Mayer cooperated together to mislead the bank into believing that the Mayers would be the true borrowers here rather than the Montis" (Tr. 97) and that Bank One did not know about the scheme and reasonably relied upon Mayers' promise to repay the loan (Tr. 98–99). On August 12, 1993 Judge Wedoff therefore ordered judgment in favor of Bank One and against Mayers and declared the Circuit Court judgment to be nondischargeable in the amount of $149,761.90, while denying Bank One's claim for attorneys' fees.

On August 20, 1993 Bank One filed a motion for reconsideration. After further proceedings held on September 20, 1993, followed by briefing by the parties, on April 21, 1994 Judge Wedoff entered the Order now on appeal:

> That the Motion for Reconsideration is granted, and for reason stated on the record both on July 21, 1993 and on September 20, 1993, that Judgment is entered in favor of Bank One—Rockford, NA and against the Debtors, John Mayer and Deborah Mayer, and the Judgment entered against both John Mayer and Deborah Mayer in the Circuit Court of the 17th Judicial Circuit, Winnebago County, Illinois, in case number 88 CH 344 be and is ordered nondischargeable in the amount of $254,391.02 which amount includes attorneys fees and costs, of $35,429.46 and which will further accrue interest at the rate 7% from April 21, 1994 until paid in full.

In reversing himself on the issue of attorneys' fees, Judge Wedoff explained that he felt bound by *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987).

### Current Appeal

On April 28, 1994 Mayers filed this appeal, asking this Court to reverse Judge Wedoff's April 21 decision as to non-dischargeability of the Circuit Court judgment including attorneys' fees in favor of Bank One. In accordance with Fed.R.Bankr.P. ("Rule") 8006, Mayers filed and served their statement of issues to be presented on appeal, which may be summarized in these terms:

1. whether Mayers made false representations to Bank One;

2. whether Mayers possessed the requisite intent to deceive Bank One;

3. whether Bank One actually and reasonably relied on the alleged misrepresentations; and

4. whether a bankruptcy court may refuse to discharge a debt for attorneys' fees as ancillary to a debt found nondischargeable under Section 523(a)(2)(A).

### Standard of Review

■ In the course of a district court's decision to affirm, modify or reverse an order of the bankruptcy court, "[f]indings of fact

---

4. Neither Deborah nor Rosemarie testified at the trial.

... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses" (Rule 8013). Thus a bankruptcy court's factual findings cannot be disturbed "simply because [the district court] is convinced it would have decided the case differently" (*In re Weber*, 892 F.2d 534, 538 (7th Cir.1989), quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). However, both questions of law and mixed questions of law and fact are reviewed de novo (*In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir.1986)). Mayers raise three questions of fact (their first three issues) and one question of law (their fourth issue), and each will be reviewed under the appropriate standard.

### Section 523(a)(2)(A)

Section 523(a)(2)(A) provides that a debt shall not be discharged through bankruptcy "for money ... to the extent obtained by ... false pretenses, a false representation, or actual fraud," a provision designed to ensure that the bankruptcy code relieves only *honest* debtors from "the burden of hopeless insolvency" (*Neal v. Clark*, 95 U.S. (5 Otto) 704, 709, 24 L.Ed. 586 (1877)). Our Court of Appeals requires that a creditor prove three elements to succeed on a claim that a debt is nondischargeable under Section 523(a)(2)(A): knowingly false or willful misrepresentation, intent to deceive and reasonable reliance by the creditor (*In re Kimzey*, 761 F.2d 421, 423–24 (7th Cir.1985); *In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992)). Although Judge Wedoff employed what is nominally a five-element test as set out in *In re Balzano*, 127 B.R. 524, 530 (Bankr. E.D.N.Y.1991), it is substantively identical— it simply separates the first *Kimzey–Scarlata* element into two parts: ((1) a representation that (2) the debtor knew to be false) and adds resulting damages as a separate factor.

As for the required proof of those elements, the first really needs no elaboration. "Intent to deceive," the second element, may be inferred from circumstances indicating that at the time the loan was made the debtor possessed no reasonable intent to repay (see credit card cases relied upon by Judge Wedoff (Tr. 92–93), such as *In re Clagg*, 150 B.R. 697, 698–99 (Bankr.C.D.Ill. 1993) (destitute gambler's asserted hope to repay credit card debt with Lotto winnings— a 1 in 12,913,532 chance—did not reflect a reasonable intent to repay); *In re Pursley*, 158 B.R. 664, 668 (Bankr.N.D.Ohio 1993) (couple with $15 per month left after expenses could not reasonably have intended to repay $5,000 credit card advance)). Reliance, the last and probably the most heavily litigated element, requires the creditor to show that he or she conducted a reasonable investigation or relied on a long-standing relationship and did not in fact know of the falsity of the statements in issue (*In re Iaquinta*, 98 B.R. 919, 923 (Bankr.N.D.Ill.1989); cf. *In re Garman*, 643 F.2d 1252, 1256–57, 1259–60 (7th Cir.1980)); *In re Smigel*, 90 B.R. 935, 937–41 (N.D.Ill.1988).

### Burden of Proof

Nondischargeability must be proved by the creditor by a "preponderance of the evidence" (*Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Though it is often said that the party seeking to establish an exception to discharge bears the "burden of proof" (e.g., *Iaquinta*, 98 B.R. at 922), Rule 4005 makes clear that the situation is more complex than that. While the creditor must carry both the initial burden of production and ultimate burden of persuasion, the burden of going forward with the evidence shifts to the debtor in an appropriate case, and Rule 4005 leaves to the courts "the formulation of rules governing the shift of the burden" (Advisory Committee's Note to Rule 4005; *In re Martin*, 698 F.2d 883, 887–88 (7th Cir.1983)).

### John Mayer

John's position that he knew nothing about the transaction flies in the face of credible testimony by one loan officer (Seinwill) and one co-conspirator (Donald), together with John's own signature on at least three key documents (note, mortgage and financial statement). In combination that places John at the heart of a scheme to defraud Bank One.

Judge Wedoff credited Seinwill's testimony that she had no knowledge of the power of attorney at the time the loan was made (Tr. 99), and he found that Bank One's pre-loan investigation was otherwise reasonable. In particular, Bank One obtained tax returns and financial statements from John, as well as his oral representation that the hotel's cash flow would be supplemented by his professional income (see *Garman*, 643 F.2d at 1258 ("it is not the court's duty ... to second guess a creditor's decision to make a loan or to set loan policy for the creditor")).

It is of course Judge Wedoff's function to weigh the credibility of witnesses on the stand—a function that this reviewing court should not second-guess even if it were inclined to do so (as it is not). Mayers' Reply Brief is devoted almost entirely (all but one page of the argument) to the contention that before the loan closing Seinwell had seen the power of attorney that assertedly showed the loan was really for Montis' benefit and not for Mayers'—but that issue poses a classic question of credibility, on which Judge Wedoff's resolution is conclusive. In this instance it is really an understatement to say that Judge Wedoff was not clearly erroneous in determining that John willfully misrepresented that he intended to repay the Bess Hotel loan, that he did so with an intent to deceive Bank One and that Bank One actually and reasonably relied upon that misrepresentation.

### Deborah Mayer

Deborah also signed the note and mortgage through which a representation was made to Bank One that she intended to repay the Bess Hotel loan. Quite apart from the relationships disclosed by the record (her being married to John and her kinship and extremely close personal friendship with Rosemarie), Donald's testimony reflected that she attended the dinner at which the two couples—Mayers and Montis—hatched the scheme. Mayers Br. 28 argues (perhaps for the first time, though it does not matter) that the only predicate for the bankruptcy court's ruling of non-dischargeability against Deborah was her being married to John— apparently a suggestion that Deborah was

somehow duped into signing documents placed before her by her husband and her good friends without any understanding of how her actions fit into a fraudulent scheme. That of course would require the bankruptcy court to have accepted—without a shred of evidence—the notion that Deborah paid no heed to the discussion at the scheme-devising dinner.

But Judge Wedoff was not required to buy such an ostrich approach. Under Rule 4005 the burden of going forward with the evidence shifted after Bank One established Deborah Mayer's close personal relationship with the other conspirators and her attendance at the critical first meeting, and it was up to her at that point to offer "at least a minimally credible explanation" (*Martin*, 698 F.2d at 887–88). She did not. Deceptive intent must almost always be inferred from surrounding circumstances (*Iaquinta*, 98 B.R. at 923; *Clagg*, 150 B.R. at 698–99; *Pursley*, 158 B.R. at 668), and absent some adequate explanation from Deborah the circumstances in this case clearly allowed—if not actually compelled—the inference that she was in on the scheme.

What was said as to John applies to Deborah as well. Judge Wedoff cannot be said to have been clearly erroneous in determining that Deborah willfully misrepresented that she would repay the Bess Hotel Loan, that she did so with the requisite intent to deceive and that Bank One actually and reasonably relied on that misrepresentation.

### Attorneys' Fees

As already stated, Judge Wedoff reversed his earlier ruling on the attorneys' fees issue in reliance on *Klingman v. Levinson*, 831 F.2d 1292, 1296–97 (7th Cir.1987). *Klingman* there held that attorneys' fees stipulated to as part of a consent decree settling charges of dissipation of trust assets were nondischargeable in bankruptcy as "ancillary" to a primary debt that was itself nondischargeable under Section 523(a)(4) (fiduciary fraud, embezzlement or larceny).

*Klingman* itself thus concerned a subsection of Section 523 different from the one at issue here (Section 523(a)(2)(A)). But each of the two cases that *Klingman* cited in support of the proposition that ancillary obli-

gations such as attorneys' fees may attach to the primary debt, so that their status in terms of nondischargeability was linked to that of the primary debt—*In re Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985) and *In re Foster,* 38 B.R. 639, 642 (Bankr.M.D.Tenn. 1984)—involved Section 523(a)(2)(A), just as this case does.

This Court agrees with Judge Wedoff and with other courts in this Circuit that have found *Klingman* controlling as to Section 523(a)(2)(A) (e.g., *In re Mayer,* 164 B.R. 83, 85 (N.D.Ill.1994), another case involving the nondischargeability of an obligation of the selfsame debtors—John and Deborah). It affirms the bankruptcy court's finding of nondischargeability of the attorneys' fees.

### Conclusion

There were no errors of any nature in the bankruptcy court's decision that Mayers' debt to Bank One, including the full amount of attorneys' fees, was nondischargeable under Section 523(a)(2)(A). Judge Wedoff's Order is affirmed in all respects.