In re Jeannie NILES, Debtor.

Rita G. OTTO, Appellant,

v.

Jeannie NILES, Appellee.

No. 95–55968.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1996.

Decided Feb. 12, 1997.

Timothy D. Principe, Blackmar, Stevens & Principe, San Diego, CA, for appellant.

William J. Howell, San Diego, CA, for appellee.

Before: FERNANDEZ and HAWKINS, Circuit Judges, and SCHWARZER,* Senior District Judge.

SCHWARZER, Senior District Judge:

This appeal calls on us to determine who bears the burden of proof in a nondischarge-ability proceeding under 11 U.S.C. § 523(a)(4) brought by a creditor alleging "defalcation while acting in a fiduciary capac-ity." We must also decide whether loans by a client to his real estate agent and not repaid are nondischargeable under § 523(a)(4).

* Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Rita G. Otto and her husband Dr. Evan L. Otto invested their retirement money in real estate, using appellee Jeannie Niles as a broker and property manager. Niles bought and sold property at Dr. Otto's direction. Niles also collected rents and loan payments for the Ottos, secured tenants for their rental properties, and made payments on their behalf for loans, taxes, insurance, and maintenance and cleaning of the proper-ties.

Niles also acted as a property manager for several other people. The funds collected on behalf of all her clients went into the same property management account; the expenses for all the properties she managed were paid out of the same account. Niles also with-drew from this account property manage-ment fees of about ten percent of the gross rents received. For the Ottos, as for her other clients, she kept separate ledgers, re-flecting their respective balances in the ac-count.

In early 1990, Dr. Otto decided to retire. He asked Niles to inform the Ottos of the status of their real estate holdings and in-come. Niles told the Ottos that she had borrowed, lost, or misappropriated around $130,000 of their retirement money. The next day Dr. Otto committed suicide.

Mrs. Otto obtained a state court judgment against Niles by stipulation, based on the breach of a settlement agreement that pur-ported to resolve a number of Otto's claims against her. Niles then filed for bankruptcy under Chapter 7, seeking discharge of her debt to Otto. Otto filed an adversary pro-ceeding, contending that Niles' debt was not dischargeable because it resulted from defal-cation by a fiduciary.

At the trial in the bankruptcy court, Otto made certain claims arising out of Niles' handling of the property management ac-count:[1] (1) for an interest payment of $2,600 she allegedly received from one of Otto's borrowers and retained; (2) for four install-

1. Otto made other claims, in particular, a claim that Niles had embezzled funds, which were not preserved on appeal.

ments of $3,333 on a personal loan she had taken from Otto that were not paid, but that she accounted for as paid in full; (3) for $3,579.60 allegedly taken from an account when Niles changed a positive balance of $2,011.51 to a negative balance of $1,568.09 by enclosing it in parentheses; and (4) for a $7,000 commission to which she was not entitled. The bankruptcy court found these items, aggregating $16,512.93, to be "bookkeeping errors" and dischargeable. The court also found that a check for $8,914 received on behalf of the Ottos and deposited by Niles into her personal account rather than into the property management account, was nondischargeable under § 523(a)(4).

Otto also asserted claims arising out of personal loans by the Ottos to Niles and payment to her of "prepaid commissions." Niles repaid some of these borrowed funds, but continued to borrow more. At the time the bankruptcy petition was filed, Niles owed approximately $49,000 in loans and another $40,000 in "prepaid commissions." Otto contended that the failure to repay these amounts was a defalcation by a fiduciary. The court found them to be dischargeable loans.

■ The bankruptcy court entered judgment for Otto in the amount of $8,914.59 and the district court affirmed. Otto now appeals. We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. We review issues of law *de novo* and findings of fact for clear error. *Feder v. Lazar (In re Lazar)*, 83 F.3d 306, 308 (9th Cir.1996).

## II. DISCHARGEABILITY OF CLAIMS RELATING TO THE PROPERTY MANAGEMENT ACCOUNT

■ A debt is nondischargeable under 11 U.S.C. § 523(a)(4) where "1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created." *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987).

■ There is no dispute with respect to the first and third elements. The bankrupt-

cy court found—correctly—that Niles was acting as a fiduciary with respect to the property management account and this is not disputed. Because Niles collected rents for the Ottos in her capacity as a licensed real estate broker, Cal.Bus. & Prof.Code § 10131(b) (defining real estate broker), and was required either to pay those funds directly to the Ottos or to hold them in a trust fund account in accordance with the Ottos' instructions, she was the trustee of an express trust. Cal.Bus. & Prof.Code § 10145(a)(1); *Batson v. Strehlow*, 68 Cal.2d 662, 674, 68 Cal.Rptr. 589, 441 P.2d 101 (1968) ("The law imposes on a real estate agent 'the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary.'"); Cal.Civ.Code § 2322(c). Thus, "the fiduciary relationship . . . [arose] from an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir.1996) (citing *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986)).

■ It is the remaining element, the occurrence of a defalcation, that poses the problem in this case. Although the bankruptcy court found that a fiduciary relationship existed, it rendered judgment for Niles on all but one claim, finding the only defalcation to have occurred when Niles accepted $8,914 on behalf of the Ottos, then kept the money. The bankruptcy judge found, with respect to the amounts of $7,000 and $9,512.93, that Niles had adequately explained them, that she did not receive the funds, and that they were merely bookkeeping errors.[2] The court's oral findings continued:

> Mrs. Niles testified the rents went into the trust account, the management account. There's been no rebuttal testimony. The evidence is that she put the money in a trust account and paid the bills. I don't have any evidence to the contrary. I don't have an accountant. I don't have a CPA. I don't have an operator [sic, expert?] coming in saying: "Your Honor, that's not the

---

**2.** Because Niles herself testified that she received the $7,000 but had been authorized by Otto to retain it, the finding that she did not receive it is clearly erroneous.

case. I can tell you—I can show you right now there's a check that didn't go in."

Otto contends that the bankruptcy judge erred in failing to impose the burden on Niles to prove that she complied with her fiduciary duty, i.e., that she did not commit a defalcation. The bankruptcy judge was, of course, entitled to assess the credibility of the witnesses and to accept Niles's testimony while rejecting Otto's. But here the court also rested its decision on gaps in Otto's evidence rather than on preference for Niles' testimony. We thus cannot say that the court's assignment of the burden of proof in this case, if it was error, was harmless. *See Battaglia v. United States (In re Battaglia)*, 653 F.2d 419, 423–24 (9th Cir.1981) (error regarding assignment of burden of proof required reversal where decision rested on gaps in testimony); *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir.1994) (errors in assigning burden of proof ordinarily require reversal). We must therefore determine where the burden lies to prove defalcation.

■ Federal law defines what constitutes a defalcation: it is a "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." *Lewis*, 97 F.3d at 1186 (quoting Black's Law Dictionary 417 (6th ed. 1990)). Federal law also governs the allocation of the burden of proof to establish nondischargeability. *See Grogan v. Garner*, 498 U.S. 279, 283–84, 111 S.Ct. 654, 657–58, 112 L.Ed.2d 755 (1991). In *Grogan*, the Court determined that the language of § 523, as well as its legislative history and its predecessor, 11 U.S.C. § 35 (1976 ed.), are silent with respect to the standard of proof for the discharge exceptions. *Id.* at 286, 111 S.Ct. at 659. Similarly they are silent on the issue of who has the burden of proof under § 523(a)(4). *Compare* 11 U.S.C. § 523 *with id.* § 362(g) (assigning burdens of proof in motion for relief from stay), § 363(o) (assigning burdens of proof in motion for use of property); Bankr.Rule 4005 (assigning burden to creditor objecting to discharge under 11 U.S.C. § 727). Looking to case law, we find few decisions dealing with the issue of allocation of the burden to establish nondischargeability under § 523(a)(4). In *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 114 (5th Cir.1992), the court, without discussion, stated that "the burden [rests] on the creditor to prove that the debt falls within the § 523(a)(4) exception." In *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr.E.D.Mich.1994), however, the court held that under both state and federal law the burden of proof of defalcation rests on the debtor/fiduciary. *Cf. Semilof v. Waskew (In re Waskew)*, 191 B.R. 34, 37–39 (Bankr. S.D.N.Y.1995) (applying state law in imposing burden of production on debtor); *Erie Materials, Inc. v. Oot (In re Oot)*, 112 B.R. 497, 501 (Bankr.N.D.N.Y.1989) (same).[3]

---

3. Generalized statements that the creditor bears the burden of proving nondischargeability are common in cases arising under other provisions of § 523. *See, e.g., In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994); *Goldberg v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992); *Transamerica Comm. Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 554, 556 (9th Cir.1991). But exceptions to this general principle have also long been recognized. *See Hill v. Smith*, 260 U.S. 592, 595, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923) (debtor must prove that creditor omitted from schedule had actual knowledge of bankruptcy proceedings); *see, e.g., United States v. Bridges*, 894 F.2d 108, 111 (5th Cir.1990) (same); *Woodcock v. Chemical Bank (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir.) (debtor has burden of proving element of undue hardship under § 523(a)(8), which excepts debts for student loans from discharge), *cert. denied,* —— U.S. ——, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995); *Pennsylvania Higher Educ. Assistance Agency v. Faish (In Re Faish)*, 72 F.3d 298, 301 (3d Cir.1995) (same),

*cert. denied,* —— U.S. ——, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996); *Stone v. Stone (In re Stone)*, 199 B.R. 753 (Bankr.N.D.Ala.1996) (citing authorities allocating to debtor burden of proving "ability to pay" and "detriment" under § 523(a)(15)(A)(alimony)).

Two decisions in addition to those cited in the text say, without authority, that the creditor has the burden to "establish" defalcation under § 523(a)(4). In *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir.1996), the court stated that the creditor must establish a fiduciary relationship and a defalcation committed in the course of the fiduciary relationship. Because the creditor had failed to establish a fiduciary relationship, however, the court did not reach the defalcation issue. In *In re Thomas*, 729 F.2d 502, 505–06 (7th Cir.1984), the court, while concluding that the creditor had met its burden by showing defalcation by defendants when they used the trust fund for their own purposes, reached that conclusion by relying on "the absence of proof by defendants of expendi-

In the absence of evidence that, by amending the Bankruptcy Act in 1970 and adopting § 523 in 1978, Congress intended to impose *sub silentio* a particular burden of proof on a creditor asserting the § 523(a)(4) exception, *see Grogan,* 498 U.S. at 286, 111 S.Ct. at 659, we conclude that the appropriate point of reference is the burden imposed by the common law. That, of course, was the background against which Congress legislated when the exception from discharge for fiduciary defalcation was first added to the Bankruptcy Act in 1867. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 108, 111 S.Ct. 2166, 2169–70, 115 L.Ed.2d 96 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles. Thus, where a common-law principle is well established ... the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.' ") (citations omitted); *see also United States v. Texas,* 507 U.S. 529, 534, 113 S.Ct. 1631, 1634–35, 123 L.Ed.2d 245 (1993) (same); *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 511, 114 A.L.R. 769 (2d Cir.1937) (L. Hand, J.) (describing history of defalcation exception). Moreover, until 1970, the issue of the burden of proof was generally determined in state courts applying common law, *see Grogan,* 498 U.S. at 284 n. 10, 111 S.Ct. at 658 n. 10; in the absence of

apparent policy reasons to depart from the settled principles, state law treatment of the burden of proof remains the appropriate point of reference.

■ Here Otto established, and the bankruptcy court found that Niles, as a fiduciary, had misappropriated a check for $8,914.59, thus committing a defalcation within the meaning of the Act. *See Lewis,* 97 F.3d at 1186. That evidence also established that Niles had violated her fiduciary duties under California law. Under California law the burden then shifts to the fiduciary to render an accounting. *Paramount Mfg. Co. v. Mohan,* 196 Cal.App.2d 372, 16 Cal.Rptr. 417, 421 (1961). Some decisions establish an even lesser standard for activating the fiduciary's duty to account. *See Batson v. Strehlow,* 68 Cal.2d 662, 68 Cal.Rptr. 589, 598, 441 P.2d 101, 110 (1968) ("When the principal questions the acts done by the agent in the course of the agency the burden is cast upon the latter to prove that he acted with the utmost good faith toward the principal...."); *Kennard v. Glick,* 183 Cal.App.2d 246, 7 Cal. Rptr. 88, 91 (1960).

■ These decisions are consistent with common law generally, which places the burden on one acting as a fiduciary to explain all transactions taken on the principal's behalf.[4] For example, the *Restatement (Second) of Agency,* section 382, comment e states:

tures for the Green Market project": "Unless they can show what Green Market costs they paid from the [funds received from plaintiff]" the liability for those funds is a nondischargeable debt. *Id.* at 505.

4. Historically, the common law has placed on fiduciaries the burden of proving their faithfulness to their trust in actions for an "accounting." *See* H.D. Warren, Annotation, *Availability of Equitable Remedy of Accounting Between Principal and Agent,* 3 A.L.R.2d 1310, 1312 (1949) (citing Pomeroy, *Equity Jurisprudence,* 5th ed. § 1420); *see also* Joel Eichengrun, *Remedying the Remedy of Accounting,* 60 Ind.L.J. 463, 464 (1985). The obligation to render an accounting is triggered by proof that the plaintiff entrusted property to the defendant in a fiduciary relationship. *See, e.g., Rhodes v. Little Falls Dairy Co.,* 230 A.D. 571, 245 N.Y.S. 432 (1930), *aff'd without opinion,* 256 N.Y. 559, 177 N.E. 140 (1931); *see also* Melissa K. Stull, *Accounts and Accounting,* 1 Am.Jur.2d, § 66. Once the fiduciary relationship is established, the burden is on the defendant to

show that he has performed his duties properly: "[t]he action for account render compels the fiduciary to explain the books under oath." *Townes v. Birchett,* 12 Leigh (Va.) 173 (1841); Stull, *supra.* The defendant thus could not escape liability simply by remaining silent or by testifying generally that funds were not misappropriated. Instead, the fiduciary was under a duty to render an account that

should show in detail the items expended and show when, to whom, and for what purposes the payments were made so the beneficiaries can make a reasonable test of the accuracy of the accounts. The accounts should be clear and accurate and if they are not, all presumptions are against the trustee and all obscurities and doubts are to be taken adversely to him. *Alexopoulos v. Dakouras,* 48 Wis.2d 32, 179 N.W.2d 836, 841 (1970) (citation omitted); *see also Updike v. Wolf and Co.,* 175 Ill.App.3d 408, 124 Ill.Dec. 876, 882–883, 529 N.E.2d 993, 999–1000 (1988); *Engelsmann v. Holekamp,* 402 S.W.2d 382 (Mo.1966).

If the principal proves or the agent admits that the agent has come into possession of money or other thing for the principal, the agent has the burden of proving that he has paid it to the principal or disposed of it in accordance with his authority.

*See also Restatement (Second) of Trusts,* § 172 cmt. b.

The burden that the common law places on the fiduciary to account is more than a shifting of the burden of coming forward with evidence. In *Landis v. Scott,* 32 Pa. (8 Casey) 495 (Pa.1859), for example, an action for an accounting against an executor who acted as a fiduciary with respect to the decedent's real estate, the Supreme Court of Pennsylvania said:

The duty of a trustee ... to keep regular and correct accounts is imperative. If he does not, every presumption of fact is against him. He cannot impose upon his principal ... the obligation to prove [what] he has actually received.... By failing to keep and submit accounts, he assumes the burden of repelling the presumption and disproving negligence and faithlessness.... He is prima facie accountable for all the rents of all the properties, during the whole period of his agency, and he cannot be discharged from such accountability, except by proof that he did not collect them, and could not collect them by the faithful exercise of due diligence.

*Id.* 32 Pa. at 502–03; cf. *Bank–One Rockford N.A. v. Mayer (In re Mayer),* 173 B.R. 373, 377 (N.D.Ill.1994) (applying burden of production, rather than burden of proof, in action for fraud under 11 U.S.C. § 523(a)(2)(A)), *aff'd,* 51 F.3d 670 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995).

■ Basic principles of the law of fiduciaries therefore place the burden to render an accounting on the fiduciary once the principal has shown that funds have been entrusted to the fiduciary and not paid over or otherwise accounted for. Imposing that burden is also consistent with relevant policy considerations. The evidence of what funds were received by the fiduciary and how they were applied is likely to be more accessible to the fiduciary than to the principal. *See Welsh v.*

*United States,* 844 F.2d 1239, 1245 (6th Cir. 1988) ("When ... the customary approach would result in placing the burden upon a party who is not in a better position to produce the required proof, the courts have not hesitated to allocate the burden to the opposing party."). Imposing this burden also reinforces the substantive policies behind fiduciary law by ensuring that fiduciaries will perform their obligations faithfully and with care. *See generally Restatement (Second) of Trusts,* § 172 (duty to render accounts); *Restatement (Second) of Agency,* § 382 (same).

Finally, this allocation of the burden of proof is consistent with policies underlying bankruptcy law. As the Court observed in *Grogan,* the Bankruptcy Code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" 498 U.S. at 287, 111 S.Ct. at 659. The *Grogan* Court reasoned that it was unlikely that Congress, in fashioning the standard of proof, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud; here, it is similarly unlikely that Congress would have favored faithless trustees over the victims of their breaches. *Id.*

We conclude that Otto satisfied her burden of proof by establishing that Niles was a fiduciary to whom funds had been entrusted. The burden then shifted to Niles to account fully for all funds received by her for Otto's benefit, by persuading the trier of fact that she complied with her fiduciary duties with respect to all questioned transactions. Because the bankruptcy court erred in placing the burden of proving the defalcation on Otto, the judgment must be vacated with respect to the $9,512.93 and $7,000 items and the matter remanded for further proceedings consistent with this opinion.

## III. DISCHARGEABILITY OF "LOANS" AND "PREPAID COMMISSIONS"

■ With respect to Otto's claims based on loans to Niles, the bankruptcy court found that there was no evidence that Niles did not intend to repay the loans and that finding is not clearly erroneous.

Otto asserts that Niles occupied "a continuing fiduciary relationship with her clients," and that by borrowing from them in her personal capacity and failing to repay, she breached her duty of loyalty. But a debtor is only a "fiduciary" for purposes of § 523(a)(4), where state law imposes an express or statutory trust on the funds at issue. *See Lewis,* 97 F.3d at 1185. A trustee may, in some circumstances, breach the fiduciary duty of loyalty by taking a loan from the trust. *See Restatement (Second) of Trusts,* § 170, cmt. 1; *Estate of Stowell,* 595 A.2d 1022, 1025–26 (Me.1991). But none of the loans to Niles were taken from the property management account. Each was made by Dr. Otto to Niles from a separate account, which he controlled. Taking these loans did not breach a fiduciary duty.

The bankruptcy court further found that the prepaid commissions were dischargeable loans rather than trust funds. Under state law, the intent of the parties is controlling in determining whether payment of funds is a loan or creation of a trust. *Abrams v. Crocker–Citizens Nat. Bank,* 41 Cal.App.3d 55, 114 Cal.Rptr. 913, 915 (1974); *see also Altura Partnership v. Breninc, Inc. (In re B.I. Financial Services Group, Inc.),* 854 F.2d 351, 354 (9th Cir.1988). The question was one of fact and the court's finding was not clearly erroneous.

Otto argues that even if the "prepaid commissions" were loans and not trust funds, the failure to repay them was a breach of fiduciary duty because the parties had agreed that she would repay the loans by offsetting any future commissions earned. The bankruptcy court declined to credit the testimony in support of that contention. There was, moreover, testimony that Niles' taking of each of the later-earned commissions was specifically authorized by the Ottos. Substantial evidence supports the bankruptcy court's finding that Niles breached no fiduciary duty by failing to offset subsequent commissions.

## IV. PREJUDGMENT INTEREST

The bankruptcy court did not rule on Otto's request for prejudgment interest. The district court declined to award interest on the ground that it was a matter of discretion for the bankruptcy court.

By failing altogether to rule on the request for interest, the bankruptcy court did not exercise its discretion. The district court should have remanded for a determination by the bankruptcy court. *Oaks of Woodlake Phase III, Ltd. v. Hall, Bayoutree Assoc., Ltd. (In re Hall, Bayoutree Assoc., Ltd.),* 939 F.2d 802, 804 (9th Cir.1991). Because the debt the court found to be nondischargeable arose under state law, *see Grogan,* 498 U.S. at 284, 111 S.Ct. at 657–58, the award of prejudgment interest on that debt is also governed by state law. Under California law, prejudgment interest is a matter of right where there is a vested right to recover "damages certain" as of a particular day. Cal.Civ.Code § 3287(a). Here, the amount of $8,914, which the court found to be owing, and whatever other amounts the court may find to be owing on remand, are a sum certain as of a particular day, entitling Otto to prejudgment interest. The liability for that interest is nondischargeable because it is ancillary to a nondischargeable debt. *See Florida v. Ticor Title Ins. Co. of California (In re Florida),* 164 B.R. 636, 639 (Bankr.9th Cir.1994).

## V. CONCLUSION

Accordingly, we VACATE the judgment insofar as it determined that the sums of $7,000 and $9,512.93 are dischargeable debts, and REMAND to the bankruptcy court for further proceedings consistent with this opinion. In all other respects the judgment is AFFIRMED. The parties shall bear their own costs on appeal.

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in part, but I respectfully dissent in part. I agree that Niles was properly denied a discharge of the $8,914 amount, but that is not in issue. I also agree that by any standard the bankruptcy court erred when it decided against Otto on the $7,000 amount. However, Otto's arguments regarding the $9,512.93 amount are seriously flawed, and I

dissent from the majority's contrary determination.

In the first place, I do not think that discussions of the quantity and quality of the proof required when a creditor seeks to prevent discharge of a debt are relevant to the issue of who has the burden of persuasion. Thus the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 281, 285–87, 111 S.Ct. 654, 656, 659, 112 L.Ed.2d 755 (1991), does not help us to decide this case.

What is more pertinent is the fact that the burden of preventing a debtor's discharge has been held to fall upon the creditor, and not upon the debtor. That rule has been almost universally applied to the discharge exceptions contained in § 523,[1] including the fiduciary exception in § 523(a)(4). *See, e.g., Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir.1996) (creditor had to prove fiduciary relationship existed and defalcation occurred to prevail under § 523(a)(4)); *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 114 (5th Cir.1992) (the ultimate burden is on creditor to show that debt falls within § 523(a)(4) exception for defalcation by fiduciary); *In re Thomas*, 729 F.2d 502, 505–06 (7th Cir.1984) (creditor satisfied its burden of establishing nondischargeability by showing that its payment created a trust and that defalcation by debtor occurred); *see also Schlecht v. Thornton (In re Thornton)*, 544 F.2d 1005, 1006 (9th Cir.1976) (burden was on creditor to show debt nondischargeable due to misappropriation by fiduciary under § 35(a)(4) which was predecessor to § 523(a)(4), but fiduciary capacity not shown); *cf. In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994) (creditor "had the burden to prove by a preponderance of the evidence that her debt met one of the statutory exceptions to discharge"); *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992) ("The burden is on the objecting creditor to prove exceptions to discharge."); *Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 556 (9th Cir.1991) (creditor did not meet its burden of proof in showing debt was nondischargeable due to embezzlement under § 523(a)(4)).

In my opinion, that is an exceedingly wise rule. One purpose of the bankruptcy law is, indeed, "to relieve unfortunate and honest debtors from perpetual bondage to their creditors...." 2 Joseph Story, *Commentaries on the Constitution of the United States* § 1106 (2d ed. 1851). No doubt that should not apply to "perpetrators of fraud" or to certain other disfavored classes of debtors. *Grogan*, 498 U.S. at 287, 111 S.Ct. at 659. It could be argued that all who attempt to discharge just debts are dishonest in some sense and that an honest bankrupt is an oxymoron. But we assume no such thing, and the burden of obtaining a determination that someone is in a class of disfavored debtors, who must continue to shoulder the sins of their past, is one that should rest with the person who seeks to prevent the discharge—the creditor. By the way, as far as reprehensibility is concerned, I fail to see why an honest, but negligent, fiduciary should be treated more harshly than a person who has committed an out and out act of fraud upon others.

There may, indeed, be times when circumstances will call out for a presumption that the creditor does fall into a disfavored class, but that should not affect the ultimate burden of persuasion. *See Semilof v. Waskew (In re Waskew)*, 191 B.R. 34, 36–38 (Bankr. S.D.N.Y.1995) (creditor must establish that debtor committed a defalcation while acting as fiduciary, but may benefit from statutory presumption of diversion under state's lien law); *Erie Materials, Inc. v. Oot (In re Oot)*, 112 B.R. 497, 500–01 (Bankr.N.D.N.Y.1989) (creditor must establish that the debt arose through defalcation for § 523(a)(4) exception to apply, but may benefit from a statutory presumption or inference of diversion under state lien law). *But see Cappella v. Little (In re Little)*, 163 B.R. 497, 503 (Bankr. E.D.Mich.1994) (creditor must as a preliminary matter establish that the debtor received funds in fiduciary capacity, then burden shifts to debtor to prove they were properly applied).

In short, I would not destabilize this area of bankruptcy law by erecting a special bur-

---

1. All statutory references are to Title 11 of the United States Code.

den of persuasion for this single discharge exception. The burden should begin and remain with the creditor. In this case it should be Otto's.

Beyond that, I cannot agree with Otto, regardless of where the burden of persuasion lies. The bankruptcy judge, who is the trier of fact, believed Niles, and she explained that each one of the items making up the $9,512.23 amount was based upon a mere error of accounting of one kind or another. One part was an error in entering an interest payment from the borrower which was, in fact, never even received. Another part was a misplaced parenthesis. Those were amounts which, she said, had never even existed. The final component was an amount forgiven by the creditor because he had been charging the somewhat excessive interest rate of 25% per annum on a loan. Again, if believed, she satisfactorily responded to any burden placed upon her. Given her evidence and "no rebuttal testimony," the bankruptcy judge chose to believe her. Once believed, she should have and did prevail. That was not affected by the burden of persuasion because all of the weight was on one side—Niles'.

Finally, I agree that the bankruptcy court should have decided the interest issues and would remand for that purpose. I, however, would not attempt to give further guidance or instructions on the subject because we do not have the complete picture before us. For example, we do not know the terms of the settlement agreement or of the state court judgment, both of which probably merged all of Otto's separate claims into one. In the face of that uncertainty, I hesitate to issue an advisory opinion on what ultimate decision might be called for.

Thus, because I disagree with Otto's position on both the law and the facts, I respectfully dissent from the majority opinion's determination in part II regarding the $9,512.13 amount, although I concur with part III and in a portion of part IV of that opinion.