In re Martin PEMSTEIN and Diana Pemstein, Debtors.

Harold Pemstein, Plaintiff,

v.

Martin Pemstein and Diana Pemstein, Defendants.

Bankruptcy No. 2:12–bk–15900–RK.
Adversary No. 2:12–ap–01291–RK.

United States Bankruptcy Court, C.D. California, Los Angeles Division.

July 26, 2012.

Christopher L. Blank, Newport Beach, CA, for Plaintiff.

Alan W. Forsley, Los Angeles, CA, for Defendants.

## MEMORANDUM DECISION RE: AD-VERSARY COMPLAINT TO DE-TERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(4) AND (a)(6), AND OB-JECTION TO DISCHARGE PUR-SUANT TO 11 U.S.C. §§ 727(a)(2)(A) AND 727(a)(3)

ROBERT N. KWAN, Bankruptcy Judge.

The above-captioned adversary proceeding came on for a trial before the undersigned United States Bankruptcy Judge on November 30, 2011 and April 10, 2012 on the complaint of plaintiff Harold Pemstein for determination of dischargeability of debt and denial of discharge pursuant to Sections 523(a)(4) and (6) and 727(a)(2)(A) and (3) of the Bankruptcy Code, 11 U.S.C. (the "Complaint"). Plaintiff Harold Pemstein ("Harold") appeared for himself and was also represented by Christopher L. Blank, Attorney at Law, P.C. Alan W. Forsley, of the law firm of Fredman Knupfer Liberman, LLP, appeared for defendants Martin Pemstein ("Martin") and Diana Pemstein ("Diana").

Having considered the testimony of the witnesses and the other evidence admitted at trial and the oral and written arguments of the parties, the court hereby issues this memorandum decision setting forth its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

On April 28, 2010, Martin and Diana filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Martin and Diana are husband and wife and were married at all times relevant to this case.

Harold and Martin are brothers and were business partners. Joint Pretrial Order ("JPO") at 2, ¶ 4. Prepetition, a dispute arose between Harold and Martin, and Harold sued Martin in the Superior Court of California. *Id.* at ¶ 5. On January 5, 2010, Harold obtained a judgment against Martin for $696,218.03 ("2010 Judgment") for Martin's breach of his duty of care to Harold in the collection of rent on behalf of HMS Properties. *Id.;* Plaintiff's Exhibit 2.

On August 9, 2010, Harold commenced the instant adversary proceeding by filing the Complaint. On September 8, 2010, Martin and Diana served and filed their answer essentially denying the allegations of the Complaint. On July 26, 2011, the court conducted a pretrial conference and entered its joint pretrial order on July 27, 2011. The trial was conducted on November 30, 2011, and a post-trial hearing was conducted on April 10, 2012. Pursuant to the court's request, the parties filed supplemental trial briefs on May 15 and 29,

2012. After the submission of the supplemental post-trial briefing, the court took the matter under submission.

## ANALYSIS

As discussed herein, the court rules in favor of Martin and Diana and against Harold on all claims of the Complaint.

### I. Section 523(a)(4)

In his first claim under § 523(a)(4), Harold alleged that Martin "committed fraud and[/] or defalcation while acting in a fiduciary capacity" by "intentionally and knowingly obtain[ing] Plaintiff's money through larceny and conversion" and by "breach[ing] his fiduciary duty to Plaintiff pursuant to Paragraphs 23–25":

23. A partner's duty of loyalty to the partnership and the other partners includes all of the following:

(A) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property or information, including the appropriation of a partnership opportunity.

(B) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership.

(C) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

24. A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

25. A partner shall discharge the duties to the partnership and the other partners and exercise any rights consistently with the obligation of good faith and fair dealing.

Complaint at 3–4, ¶¶ 18–27.

Section 523(a)(4) provides that a discharge "does not discharge an individual debtor from any debt—. . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To establish a claim for nondischargeability of debt based on fraud or defalcation in a fiduciary capacity, the creditor must prove (1) the debtor was acting in a fiduciary capacity and (2) while acting in that capacity, the debtor engaged in fraud or defalcation. *Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 713 (9th Cir.BAP1999). Defalcation is defined as the misappropriation of funds held in any fiduciary capacity, and "includes the innocent default of a fiduciary who fails to account fully for money received." *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186–1187 (9th Cir.1996); *see also Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1460 (9th Cir.1997); *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001). Fraudulent intent is not required to establish defalcation. *In re Hemmeter*, 242 F.3d at 1190.

There is no factual dispute that Martin was acting in a fiduciary capacity as a partner of Harold in HMS Properties, a family business. JPO at 2, ¶ 4 ("Plaintiff and Defendant Martin are brothers, and were business partners."); Defendant Martin Pemstein's Trial Declaration at 2, ¶ 2 ("Harold and I are brothers and former business partners."); Defendants' Post–Trial Brief at 3 ("At trial, Martin and Harold testified they were 50% owners of HMS Properties, a general partnership.

'California partners are fiduciaries within the meaning of [11 U.S.C.] § 523(a)(4).' *In re Lewis*, (9th Cir.1996) 97 F.3d 1182, 1186. Thus, the Judgment would be nondischargeable if it were the result of Martin's 'fraud or defalcation' while acting as a partner of HMS Properties.").

The court finds that at trial, Harold failed to prove by a preponderance of the evidence that Martin committed fraud or larceny by "obtaining Plaintiff's money by larceny or conversion" (i.e., stealing rental income from a family business). *See* Complaint at 3, ¶¶ 20 and 21. The court has heard and considered the testimony of Harold and defendants Martin and Diana and finds that Harold did not offer sufficient, if any, evidence that Martin stole rental income from the family business, in which he and Harold were business partners, to constitute larceny or conversion of funds owed to Harold.

■ The court also finds that at trial, Harold also failed to prove by a preponderance of the evidence that Martin committed defalcation. The facts are not in dispute regarding a defalcation because the parties stipulated in the joint pretrial order that:

4. Plaintiff and Defendant Martin are brothers, and were business partners.

5. A dispute arose between and [sic] Plaintiff and Defendant Martin, and Plaintiff sued Defendant Martin in the Superior Court of California. Plaintiff obtained a judgment against Defendant Martin for $696,218.03 on January 5, 2010 ("2010 Judgment").

11. The 2010 Judgment is final.

12. The 2010 Judgment is final and has res judicata effect.

JPO at 2, ¶¶ 4, 5, 11 and 12.

The 2010 Judgment was received into evidence at trial as Exhibit 2 and stated:

"The Court finds for the Plaintiff Harold Pemstein against Martin Pemstein finding that Martin Pemstein breached his duty of care to Harold Pemstein in the collection of rent on behalf of HMS Properties. The Court finds that the breach caused Harold Pemstein damages of $295,871.00 in principal and $400,347.03 in interest." Plaintiff's Exhibit 2. Martin admitted in his trial declaration, "The Court found that I was negligent in my duty to collect rent." Defendant Martin Pemstein's Trial Declaration at 2, ¶ 3. However, nowhere in the 2010 Judgment does the Superior Court state that Martin had failed to account for rents *he received.* Thus, the 2010 Judgment does not have any collateral estoppel effect in determining whether Martin committed defalcation. *See Bugna v. McArthur (In re Bugna),* 33 F.3d 1054, 1057 (9th Cir.1994) (the first element of collateral estoppel is that the issue decided in the prior action is identical to the issue presented in the second action).

Harold has likewise failed to present sufficient, if any, evidence that Martin actually received any funds that he allegedly failed to account for. Simple negligence to collect rents, even if one has a fiduciary duty to do so, does not constitute defalcation. *See In re Lewis,* 97 F.3d at 1186 ("Defalcation is defined as the '*misappropriation* of trust funds or money *held in any fiduciary capacity;* [the] failure to properly account for such funds.' "), *quoting* Black's Law Dictionary 417 (6th ed. 1990) (emphasis added); *In re Niles,* 106 F.3d at 1460 (quoting *In re Lewis* ); *In re Hemmeter,* 242 F.3d at 1190 (same).

Harold has failed to cite (and the court has likewise been unable to find) any authority to support his argument that a failure to collect rents constitutes defalcation. The only case on which Harold does rely is *Landis v. Scott,* a Pennsylvania

Supreme Court case from 1859 quoted in *Niles.* *See In re Niles,* 106 F.3d at 1462, *citing Landis v. Scott,* 32 Pa. (8 Casey) 495 (1859). The relevant portion of *Landis* is as follows:

> He is prima facie accountable for all the rents of all the properties, during the whole period of his agency, and he cannot be discharged from such accountability, except by proof that he did not collect them, and *could not collect them by the faithful exercise of due diligence.*

*Landis v. Scott,* 32 Pa. at 502–503 (emphasis added), *cited in In re Niles,* 106 F.3d at 1462. *Landis,* however, addresses only a fiduciary's liability in an action for an accounting. *Id. Landis* does not address or define "defalcation." *Id.* Moreover, *Landis* was quoted by the *Niles* court solely with respect to whether a fiduciary bears any burden of proof. *In re Niles,* 106 F.3d at 1462. But immediately after quoting the above portion from *Landis,* the *Niles* court emphasized that a plaintiff must show "that *funds have been entrusted* to the fiduciary and not paid over or otherwise accounted for." *Id.* (emphasis added). The state court's finding that "Martin Pemstein breached his duty of care to Harold Pemstein in the collection of rent on behalf of HMS Properties" does not necessarily show that any funds were entrusted to Martin, that is, that Martin actually received any funds that he failed to account for. The finding may just show that he was negligent in collecting rent on behalf of the family business owned by him and Harold, which is insufficient to establish defalcation.

Thus, because Harold has not offered sufficient, if any, evidence that Martin actually received funds that he failed to account for, the court finds that there can be no showing Martin committed defalcation. Therefore, for lack of sufficient evidence, the court denies Harold's claim under § 523(a)(4).

## II. Section 523(a)(6)

In his second claim under § 523(a)(6), Harold alleged that Martin "committed willful and malicious injury to" him by "stealing the rental income that [Martin] knew belonged to" him. Complaint at 4–5, ¶¶ 28–33. Section 523(a)(6) provides that a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The willful injury requirement is met when shown that defendant had a subjective motive to inflict the injury or that defendant believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1208 (9th Cir. 2001). Willful requires not only an intentional act that causes injury, but an intentional act done with the purpose of causing injury or while the actor was substantially certain that injury would result. *Kawaauhau v. Geiger,* 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). An injury is "malicious" when it is caused by "a wrongful act, done intentionally, which necessarily causes injury, and which is done without just cause or excuse." *In re Jercich,* 238 F.3d at 1208. At trial, Harold failed to prove by a preponderance of the evidence that Martin acted willfully and maliciously by stealing funds from a family business. The court has heard and considered the testimony of Harold and defendants Martin and Diana and finds that Harold did not offer sufficient, if any, evidence to constitute a willful and malicious injury to Harold. Accordingly, the court denies Harold's § 523(a)(6) claim.

## III. Section 727(a)(2)(A)

In his third claim, under § 727(a)(2)(A), Harold alleged that Martin and Diana

"with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed" their property. Complaint at 5–6, ¶¶ 34–38. Specifically, Harold alleges:

> When Defendant Martin was running the family business, Defendant obtained significant revenues in cash. Both Defendants had income of perhaps more than $1,000,000 in the past few years. Defendants secretly hid the cash in their home in various places, including hiding the cash in the walls of the home. Defendants stole this cash from the business to the detriment of Plaintiff. This cash has never been accounted for. The cash is community property that is and was an asset of this Chapter 11 Estate.

Complaint at 5, ¶¶ 35–36.

■ Section 727, applicable to individual debtors in Chapter 11 bankruptcy cases under § 1141(d)(3)(C), provides that the debtor may receive a discharge of debts in a bankruptcy case unless "(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has ... concealed— (A) property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. §§ 727(a)(2)(A) and 1141(d)(3)(C). In order to establish a claim under § 727(a)(2)(A), plaintiff must prove "1) a disposition of property, such as transfer or concealment, and 2) a subject intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir.1997). "Both elements must take place within the one-year pre-filing period...." *Id.* The burden of proof on plaintiff on a § 727 claim is preponderance of the evidence. *Western Wire Works, Inc. v. Lawler (In re Lawler)*, 141 B.R. 425, 428–429 (9th Cir. BAP 1992).

■ At trial, Harold failed to prove by a preponderance of the evidence that Martin stole cash from a family business and that Martin and Diana hid stolen cash from creditors such as Harold. The court has heard and considered the testimony of Harold and defendants Martin and Diana and finds that Harold did not offer sufficient, if any, evidence that Martin stole cash from the family business, in which he and Harold were business partners, and that Martin and Diana hid such cash to constitute an intentional concealment from creditors such as Harold. Accordingly, the court denies Harold's § 727(a)(2)(A) claim.

## IV. Section 727(a)(3)

■ In his fourth claim under § 727(a)(3), Harold alleged that Martin and Diana "have concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recording of information, including books, documents, records, and papers, from which Defendants' financial condition or business transactions might be ascertained." Complaint at 6, ¶¶ 39–42. Section 727 provides that the debtor may receive a discharge of debt in a Chapter 7 bankruptcy case unless: "(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions may be ascertained." 11 U.S.C. § 727(a)(3). Plaintiff bears the initial burden of proof under § 727(a)(3). *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1296 (9th Cir.1994). "In order to state a prima facie case under section 727(a)(3), a creditor objecting to discharge must show (1) that the debtor failed to maintain and preserve adequate records,

and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id.* (citation omitted). "Once the objecting party shows that the debtor's records are absent or are inadequate, the burden of proof then shifts to the debtor to justify the inadequacy or non-existence of the records." *Id.* (citations omitted).

 At trial, Harold failed to prove by a preponderance of the evidence that Martin and Diana concealed or otherwise destroyed their financial records. The court has heard and considered the testimony of Harold and defendants Martin and Diana and finds that Harold did not offer sufficient, if any, evidence that Martin and Diana concealed or otherwise destroyed their financial and business records. Accordingly, the court denies Harold's § 727(a)(3) claim.

### CONCLUSION

After having considered all the evidence at trial, the court determines that Harold has failed to establish by a preponderance of the evidence the necessary elements to support his claims under Sections 523(a)(4) and (6) and 727(a)(2)(A) and (3) of the Bankruptcy Code, 11 U.S.C.

Counsel for Martin and Diana Pemstein is ordered to submit a proposed form of judgment within 30 days of the entry of this memorandum decision.

IT IS SO ORDERED