UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 91-4597
_____

IN RE:

WILSON J. NICHOLAS, JR.,

Debtor.

COBURN COMPANY OF BEAUMONT,

Appellant,

versus

WILSON J. NICHOLAS, JR.,

Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(March 23, 1992)

Before WISDOM, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Coburn Company of Beaumont, a plumbing sub-contractor to Nicholas and his company S&N on four construction projects, contests the bankruptcy and district courts' conclusions that the debt owed to Coburn from these projects was not non-dischargeable in Nicholas's Chapter 7 bankruptcy. 11 U.S.C. § 523(a)(4). This court must decide whether the Texas Construction Trust Fund Statute, Tex. Property Code § 162.001 et. seq. (Vernon Supp. 1991) created a fiduciary duty between Nicholas and Coburn as

sub-contractor and, if so, whether Nicholas acted in fraud or defalcation of that duty.[1] We conclude that because no fiduciary duty existed even under the 1987 amendments to the statute, § 523(a)(4) does not bar the dischargeability of Coburn's debt. Accordingly, we affirm.

BACKGROUND

Coburn supplied plumbing materials to Nicholas's company as a sub-contractor on four construction projects. S&N was paid in full on three of those projects, but Coburn was never paid for any of the materials supplied. As of the date of Nicholas's bankruptcy, Coburn was owed over $27,000.

Nicholas is the president and sole shareholder of S&N. Nicholas represented to each general contractor that he had paid all of his sub-contractors and suppliers when in fact Coburn had not been paid.

Ruling on the applicability of 11 U.S.C. § 523(a)(4), the bankruptcy court held that Texas law made Nicholas a trustee for Coburn of funds received by S&N on the construction project to which Coburn supplied materials. The court held, however, that Nicholas did not intend to defraud Coburn of these funds and that while the evidence was "rather sketchy on exactly what happened to

---

[1]  11 U.S.C. § 523(a)(4) provides:  "(a) a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity. . . ."  In the courts below, Coburn also contended that Nicholas's actions violated § 523(a)(2), dealing with the receipt of money by false pretenses.  The courts' rejection of that theory is not appealed here.

2

the money that was received," all of the money from the projects went into the operation of Nicholas's business.[2] The court also found that there was no evidence that the funds received from the owners of the project were used for any purpose other than to pay bills of the corporation. As a result, the bankruptcy court found neither fraud nor defalcation by Nicholas while acting in a fiduciary capacity. The district court affirmed.

## DISCUSSION

We review the bankruptcy court's application of the law de novo and its findings of fact under the clearly erroneous standard. Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1307-08 (5th Cir. 1985). On appeal, Coburn contends that the bankruptcy court did not properly apply the Texas Construction Trust Fund Statute and that it clearly erred in its finding that the debtor established his affirmative defense under that statute. Nicholas relies on a previous decision of our court holding that an earlier version of the Texas Construction Trust Fund Statute created a fiduciary relationship under § 523(a)(4) only if construction trust funds were diverted "with intent to defraud." Boyle v. Abilene Lumber, Inc., 819 F.2d 583 (5th Cir. 1987). It is therefore incumbent on us to determine whether post-Boyle amendments to the Texas statute created a fiduciary duty.

---

[2] Neither of the parties notes that the district court applied the clear and convincing evidence standard of fraud to this non-dischargeability case, a standard that was shortly afterward rejected by the Supreme Court. Grogan v. Garner, ___ U.S. ___, 111 S. Ct. 654 (1991). That error does not change our analysis, but it is noted for the parties' and the courts' edification.

3

Like its predecessor, the amended version of the statute imposes criminal penalties on trustees who misapply construction trust funds. Payments received on construction contracts for the improvement of real property are designated as "trust funds," and the recipient of those funds -- in this case, the general contractor -- is deemed "trustee" of those funds. See Texas Property Code §§ 162.001-002. The beneficiaries of this "trust" are subcontractors who, like Coburn, provide the labor and materials on construction projects. Section 162.003. Other than revise the applicable criminal penalties, the only significant change made by the 1987 amendments was to explain in more detail what constitutes a trustee's "misapplication" of trust funds. The statute relied on by the court in <u>Boyle</u> provided that a trustee misapplied trust funds only if he acted "with intent to defraud" the beneficiary of those funds. See § 162.031(a). The amended statute broadens the scienter requirement:

> A trustee who, <u>intentionally or knowingly or with intent to defraud</u>, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds has misapplied the trust funds.

<u>Id</u>. (emphasis added).

The amendment also created affirmative defenses to a trustee's liability for misapplication if (a) the proceeds of the trust fund are "used to pay the trustee's actual expenses directly related to the construction . . .," or (b) the trustee has a reasonable, good faith belief that the beneficiary is not entitled

4

to such proceeds, or (c) the trustee pays the beneficiaries "all trust funds they are entitled to receive" within 30 days of being notified of a criminal investigation. § 162.031(b) and (c). While the statute thus broadens the scienter requirement to include acts done knowingly or intentionally by a "trustee," its affirmative defenses carefully refine the potential scope of coverage. For present purposes, only the first defense, which allows a trustee to pay "actual expenses directly related to the construction," must be considered.

Without mentioning the newly codified affirmative defenses, Coburn contends that Texas's broadening of the scienter requirement brings the statute more in line with the Oklahoma Lien Trust Statute, held by a pre-Boyle decision of this court to create a fiduciary relationship. See Carey Lumber Co. v. Bell, 615 F.2d 370 (5th Cir. 1980). In arguing for this result, Coburn also cites a Ninth Circuit decision, In re Baird, 114 B.R. 198 (B.A.P. 9th Cir. 1990), which concluded that Arizona's Construction Trust Fund Statute created a fiduciary relationship for purposes of § 523(a)(4). In Baird, the Bankruptcy Appellate Panel surveyed the decisions evaluating similar dischargeability claims construed under the construction trust statutes of various states. Concluding that they could generally be divided into three groups, Baird noted,

> courts hold that states which only impose criminal or other penalties for failure of a contractor to make a certain disposition of construction funds do not create fiduciary capacity for dischargeability purposes. These courts reason that any trust relationship that

5

> is created by such statutes does not arise prior to and independently of the wrong.
>
> At the other end of the spectrum, courts hold that states which expressly designate the funds received by the contractor as trust funds and which explicitly impose specific and detailed duties on the contractor regarding the funds create a fiduciary relationship for dischargeability purposes. . . .
>
> Between the two ends of the spectrum are cases, such as this one, dealing with statutes which refer to the funds as trust funds but which do not specifically impose specific and detailed duties upon the contractor with respect to those funds. <u>Carey Lumber Co.</u> . . . found the requisite trust relationship under statutes, similar to the statute at issue in this case. . . . On the other hand, <u>In re Boyle</u> . . . determined that the requisite trust relationship did not exist under similar, but not identical statutes.

<u>Id</u>. at 202-03 (citations omitted). Distinguishing <u>Carey Lumber</u> from <u>Boyle</u>, <u>Baird</u> stressed that the Texas statute at issue in <u>Boyle</u> prohibited only the fraudulent misapplication of trust funds, but was in other relevant aspects similar to the Oklahoma statute found to create a fiduciary duty in <u>Carey Lumber Co.</u> <u>Id</u>. at 203.

The Arizona statute at issue in <u>Baird</u>, like that in <u>Carey Lumber</u>, did not expressly oblige the fund holder to maintain the separate identity of any trust res, nor did it require the segregation of funds or impose bookkeeping obligations on the trustee. <u>See</u> <u>Baird</u>, <u>id</u>. It did, however, expressly prohibit the diversion or use of trust funds for any purpose other than to satisfy the claims of beneficiaries. A.R.S. § 33-1005. For this reason, the Ninth Circuit panel concluded that the Arizona statute created an express or technical trust sufficient to find a

6

fiduciary relationship for purposes of § 523(a)(4), holding that "[t]o the extent Boyle is indistinguishable from Carey Lumber and supports a contrary result, we find it unpersuasive." Id. at 203-04.

Appellant argues that because the Texas statute was amended post-Boyle to prohibit all intentional diversions of funds -- and not just fraudulent diversions -- it is now in line with the Oklahoma and Arizona statutes and therefore triggers the same fiduciary responsibilities cognizable under the Bankruptcy Code. We agree that the Texas statute's amendments have expanded the realm of debts that are nondischargeable under the Bankruptcy Code. But the statute remains less broad than those in Carey and Baird, and it falls far short of the statutes described in Boyle as creating classic, express trust arrangements. See, e.g., In re Kawczynski, 442 F. Supp. 413 (N.D. N.Y. 1977). Construing the Texas statute in light of Boyle's admonition that exceptions to discharge are generally to be "narrowly construed against . . . the creditor and in favor of the bankrupt," Boyle, 819 F.2d at 588, quoting Murphy & Robinson Investment Co. v. Cross (In re Cross), 666 F.2d 873, 879-80 (5th Cir. 1982), Coburn's claim must fail.

The essential element of our inquiry continues to be "determining what fiduciary duties are imposed on the fund holder and the manner in which the state's statutory construction funds `trust' interacts with the Bankruptcy Code debt discharge exception for these debts arising from fiduciary activities." Boyle, 819 F.2d at 586-87 (emphasis in original). Boyle interpreted the

7

former Texas statute to create a fiduciary duty only to the extent that a trustee should not divert trust funds with intent to defraud. 819 F.2d at 592. The amended statute criminalizes knowing or intentional as well as fraudulent misapplications of trust funds, subject to the three above-mentioned affirmative defenses. Relevant to this discussion, no criminal penalty attaches to the retention, use or disbursement of funds to pay the trustee's <u>actual</u> expenses <u>directly related</u> to the construction or repair of the improvement -- whether or not such expenses were owed to "beneficiaries" of the trust fund. § 162.031. If, however, trust funds were knowingly or intentionally paid for <u>more</u> than the actual expenses, or for expenses <u>not</u> "directly related" to the construction or repair project, criminal sanctions could be imposed, and <u>Boyle</u> renders such actions subject to nondischargeability. § 523(a)(4).

The statute's affirmative defense for payment of "actual expenses directly related" to a construction or repair project differentiates it from the Oklahoma and Arizona statutes, which brook no payments to non-"beneficiaries." Texas Attorney General Opinion 1988, No. JM-945. The Oklahoma statute provided that once the trustee had received payments from construction projects, "no portion thereof shall be used for any other purpose until all lienable claims due and owing shall have been paid." 42 O.S. § 153 (1971) (cited in <u>Carey Lumber</u>, 615 F.2d at 373 n.2). Under the affirmative defense to the Texas Construction Trust Fund Statute, there is no such express prohibition; general contractors may use

8

the payments they receive from construction projects to keep those projects going even if, in some instances, the beneficiaries are not paid first. What <u>Boyle</u> said still almost precisely describes the Texas statute: ". . . the statute does not create `red,' `blue,' and `yellow' dollars each of which can only be used for the `red,' `blue,' or `yellow' construction project." 819 F.2d at 586.

While perhaps realistic, the Texas statute's affirmative defense for payment of actual expenses directly related to the construction or improvement of the project is also open-ended, as the bankruptcy court's opinion reflects. The bankruptcy court found no violation of § 523(a)(4) because

> all of the money [from the construction project] went into the operation of this business. We're not dealing with an individual who took money from the contractor . . . which he diverted for his own use or . . . for some frivolous use not connected with the operation of this business . . . there is absolutely no testimony that anything happened with this money other than that it was used to pay bills in the corporation.

Coburn objects to these findings because they do not apply to Nicholas the burden of proof of the affirmative defense under Texas law. This observation ignores that federal law, although initially requiring the debtor to make a prima facie showing that he is entitled to a discharge, ultimately places the burden on the creditor to prove that the debt falls within the § 523(a)(4) exception. 3 <u>Collier on Bankruptcy</u> ¶ 523.13[6] (15th ed. 1988); <u>Garrie v. James L. Gray, Inc.</u>, 912 F.2d 808, 811 (5th Cir. 1990). Demonstrating the gap between receipts by Nicholas's company on the

construction projects and his payments to contractors such as Coburn might establish a § 523(a)(4) violation under a broader trust fund statute such as that in Baird, see 114 B.R. at 204. Because the Texas statute permits application of trust fund receipts for "actual expenses directly related" to the project, however, a beneficiary seeking to avail itself of § 523(a)(4) must adduce some evidence that funds were misapplied under this test. Coburn offered neither direct nor inferential evidence of such misapplication.

### CONCLUSION

We are bound by Boyle's conclusion that the Texas Construction Trust Fund Statute creates fiduciary duties encompassed by 11 U.S.C. § 523(a)(4) only to the extent that it defines wrongful conduct under the statute. Because the scope of such wrongful conduct has been broadened by the legislature's amendments to the statute, § 162.031, the potential grounds for nondischargeability have also broadened. Nevertheless, Coburn did not demonstrate that it could take advantage of this expansion, inasmuch as it was unable to persuade the bankruptcy court that Nicholas's plumbing company paid trust fund receipts to non-beneficiaries for items other than "actual expenses directly related" to the construction projects on which Coburn worked.

The judgments of the bankruptcy and district courts are AFFIRMED.

10