**In re Charles Edward LEE a/k/a Sid Lee, d/b/a Lee Homes, Debtor.**

**Steve and Mary Lampman, Plaintiffs,**

**v.**

**Charles Edward Lee, Defendant.**

**Bankruptcy No. 98–50674–7.
Adversary No. 98–5068.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

March 1, 1999.

Richard Ladd, Lubbock, TX, for Plaintiffs.

Charles Edward Lee, Lubbock, TX, Pro se Debtor.

## MEMORANDUM OF OPINION ON 11 U.S.C. § 523(a)(4) COMPLAINT

JOHN C. AKARD, Bankruptcy Judge.

On October 23, 1998 Steve and Mary Lampman (the Lampmans) filed a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity against Charles Edward Lee (Mr. Lee), the Debtor in the captioned case. After hearing the testimony of the parties and considering the documentary evidence admitted, the court finds the debt is dischargeable.[1]

## FACTS

On March 6, 1996 the Lampmans signed a contract to purchase a new home to be custom-built by Mr. Lee. The contract was in the amount of $74,000.[2] The Lampmans paid $500 earnest money. The parties agreed to various modifications and upgrades for the property in the amount of $10,000.[3] The Lampmans paid $5,000 cash about the time they signed the contract and another $5,000 cash prior to closing. In their pleadings, the Lampmans claimed that the $10,000 was to be used toward the purchase of the house. Mr. Lee claimed that money was to be used for upgrades and additions over and above the $74,000 base price of the house and lot. At the hearing the Lampmans' attorney agreed that the $10,000 was in addition to the base price. The Lampmans paid an additional $3,000 for various items and they paid another $7,000 to laborers and materialmen.

Additionally, the Lampmans asserted that the house was not completed and that the title company refused to insure title so that no closing could be held. Western National Bank foreclosed its construction lien on the house and lot in December, 1996. The bank then sold the home to the Lampmans for the original contract price of $74,000. The Lampmans seek a judgment of $19,843.99 along with reasonable attorney fees against Mr. Lee. Of the $19,843.99, the Lampmans aver that $13,040.14 constitutes trust funds paid directly to Mr. Lee which should be declared nondischargeable pursuant to TEX. PROP. CODE ANN. § 162.001 et seq. and 11 U.S.C. § 523(a)(4).

## STATUTES

The following statutes are relevant to a decision in this case.

11 U.S.C. § 523 states in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . . .

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(*I*).

2. No plans or specifications were introduced into evidence. Mr. Lee introduced specifications he furnished to the Federal Housing Administration, but there was no testimony or evidence that the Lampmans agreed to those specifications.

3. No evidence was presented detailing what modifications and upgrades were to be made as a result of that agreement.

(4) for fraud or defalcation while acting in a fiduciary capacity . . . .

TEX. PROP. CODE ANN. § 162.001 (Vernon 1995) states in pertinent part:

(a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

(b) Loan receipts are trust funds under this chapter if the funds are borrowed by a contractor, subcontractor, or owner or by an officer, director, or agent of a contractor, subcontractor, or owner for the purpose of improving specific real property in this state, and the loan is secured in whole or in part by a lien on the property.[4]

TEX. PROP. CODE ANN. § 162.002 (Vernon 1995) states:

A contractor, subcontractor, or owner or an officer, director, or agent of a subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds.

TEX. PROP. CODE ANN. § 162.003 (Vernon 1995) states:

An artist, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

TEX. PROP. CODE ANN. § 162.005 (Vernon 1995) reads as follows:

In this chapter:

(1) A trustee acts with "intent to defraud" when he retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds.

(2) "Current or past due obligations" are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under

the construction contract prior to the receipt of the trust funds and which are due and payable by the trustee no later than 30 days following receipt of the trust funds.

TEX. PROP. CODE ANN. § 162.031 (Vernon 1995) reads as follows:

(a) A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

(b) It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized by Chapter 53.

(c) It is also an affirmative defense to prosecution or other action brought under Subsection (a) that the trustee paid the beneficiaries all trust funds which they are entitled to receive no later than 30 days following written notice to the trustee of the filing of a criminal complaint or other notice of a pending criminal investigation.

TEX. PROP. CODE ANN. § 162.032 (Vernon 1995) states:

(a) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter commits a Class A misdemeanor.

(b) A trustee who misapplies trust funds amounting to $500 or more in violation of this chapter, with intent to defraud, commits a felony of the third degree.

---

4. Since the Lampmans' contract is dated March 6, 1996, subsection (c) is inapplicable in this case. See Tex. Prop.Code Ann. § 162.001 Historical and Statutory Notes (Vernon Supp.1999)(stating that the 1997 amendment, now codified as subsection (c), only applies to a construction contract entered into on or after September 1, 1997, and funds received under a construction contract entered into on or after that same date.).

## DISCUSSION

### Standing

■ The statutes make payments to a contractor trust funds for the benefit of any laborer or materialman who furnishes labor or material on the project. TEX. PROP. CODE. ANN. §§ 162.001–.003. The obligations protected by the statute are those incurred by the contractor for labor or materials furnished in the direct prosecution of the work. TEX. PROP. CODE. ANN. § 162.005. Defalcation occurs when the contractor intentionally, knowingly, or with intent to defraud, diverts the trust funds without paying the obligations. TEX. PROP. CODE. ANN. § 162.031. Therefore, the beneficiaries of the statute are the unpaid laborers and materialmen, not the owners who paid funds to the contractor. In this case, the Lampmans, as the owners who paid funds to the contractor, have no claim under the trust fund statutes.

Even if the Lampmans could stand in the shoes of the laborers and materialmen to whom they testified they paid $7,000, there was insufficient evidence elicited for the court to tell whether the Lampmans' $7,000 was paid because Mr. Lee failed to pay the subcontractors, or because the Lampmans requested further upgrades to the property.

### Diversion of Trust Funds

■ The Lampmans cite the court to *Capital Aggregates, Inc. v. Waters (In re Waters)*, 20 B.R. 277 (Bankr.W.D.Tex.1982). The bankruptcy court heard that case in 1982, prior to the time the Texas Legislature passed the statute now cited by the Lampmans. However, TEX. REV. CIV. STAT. ANN. art. 5472e, the statute in use at the time the bankruptcy court decided *Waters*, is now codified at TEX. PROP. CODE ANN. § 162.001 et seq. TEX. PROP. CODE ANN. § 162.001 historical notes (Vernon 1995) [Acts 1967, 67th Leg., art. 5472e, § 1].

In *Waters*, the bankruptcy court found that funds received by a contractor under a construction contract covering specific real property must be held in trust for any entity or party who has furnished labor or material under the contract, and that the statutory trust would be considered an express trust for § 523(a)(4) purposes. *Id.* at 278 (citing art. 5472e; *Carey Lumber Co. v. Bell*, 615 F.2d 370, 374 (5th Cir.1980)). The bankruptcy court held that "intent is not an essential element of defalcation and that an innocent or simple failure to account for funds received under a construction contract to improve specific real property pursuant to Article 5472e will render the ensuing debt nondischargeable under Section 523(a)(4) of the Bankruptcy Code." *Id.* at 280. However, the court declined to hold the debt nondischargeable under a state court default judgment and ordered a hearing held for the plaintiff to prove its case under § 523(a)(4) and art. 5472(e). *Id.*

Additionally, the Lampmans cited the court to *Coburn Co. v. Nicholas (In re Nicholas)*, 956 F.2d 110 (5th Cir.1992). In *Nicholas*, Coburn was an unpaid subcontractor on four Nicholas projects. *Id.* at 111. The bankruptcy court found that Nicholas was a trustee for Coburn of the funds received on the projects to which Coburn supplied materials. *Id.* However, the court held that Nicholas did not intend to defraud Coburn, saying that while the evidence was "rather sketchy on exactly what happened to the money that was received," all money from the projects went into Nicholas's business. *Id.* The court also found no evidence that funds received from the owners of the project were used for anything other than to pay the bills of the corporation and found neither fraud nor defalcation by Nicholas. The district court affirmed. *Id.*

On appeal to the Fifth Circuit Court of Appeals, Coburn complained that the bankruptcy court did not apply the Texas Trust Fund Statute properly and erred when it found the debtor established an affirmative defense under the statute. *Id.* *Nicholas* relied on *Boyle v. Abilene Lumber, Inc.*, 819 F.2d 583 (5th Cir.1987) in which the Fifth Circuit found the statute created a fiduciary relationship under § 523(a)(4) only if the funds were diverted with "intent to defraud." *Id.* Therefore, the circuit court considered whether post-*Boyle* amendments to the statute created a fiduciary duty. *Id.*

The Fifth Circuit found that funds received on construction contracts are "trust funds," that the recipient is "trustee" pursuant to

§ 162.001–.002, and that the subcontractors are the beneficiaries under § 162.003. *Id.* at 111–12. The court noted that the only significant change made by the 1987 amendments was to explain in more detail what constitutes "misapplication" of the funds. *Id.* at 112. In *Boyle*, the trustee misapplied the funds only if he acted "with intent to defraud" the beneficiary. The amendment, which is broader in scope as to the scienter requirement, states that "[a] trustee who, *intentionally or knowingly or with intent to defraud*, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds has misapplied the trust funds." *Id.*

The court stated: "The essential element of our inquiry continues to be 'determining what *fiduciary* duties are imposed on the fund holder and the manner in which the state's statutory construction funds "trust" interacts with the Bankruptcy Code debt discharge exception for these debts arising from fiduciary activities'". *Id.* at 113 (citing *Boyle*, 819 F.2d at 586–87 (emphasis in original)). The amended statute criminalizes knowing or intentional as well as fraudulent misapplications of trust funds, subject to three affirmative defenses. *Id.* at 113.

The court stated that no criminal penalty attaches if the trustee pays the trustee's actual expenses directly related to the construction or repair of the improvement—whether or not such expenses were owed to beneficiaries. *Id.* However, if the trustee knowingly or intentionally paid for more than actual expenses, or for expenses not directly related to the construction project, criminal sanctions could be imposed, and *Boyle* holds such actions subject to nondischargeability under § 523(a)(4). *Id.*

█ Coburn objected to the bankruptcy court's finding that even if Coburn did not get paid, the trustee did not take money and divert it for his own use or for some use not connected with the operation of the business. While federal law requires the debtor to make a prima facie showing that he is enti-

tled to discharge, ultimately the creditor bears the burden to prove that the debt falls within the § 523(a)(4) exception. *Id.* at 114. The court concluded:

> We are bound by *Boyle's* conclusion that the Texas Construction Trust Fund Statute creates fiduciary duties encompassed by 11 U.S.C. § 523(a)(4) only to the extent that it defines wrongful conduct under the statute. Because the scope of such wrongful conduct has been broadened by the legislature's amendments to the statute, § 162.031, the potential grounds for nondischargeability have also broadened. Nevertheless, Coburn did not demonstrate that it could take advantage of this expansion, inasmuch as it was unable to persuade the bankruptcy court that Nicholas's plumbing company paid trust funds receipts to nonbeneficiaries for items other than "actual expenses directly related" to the construction projects on which Coburn worked.

*Id.* at 114.

In the case at bar, the court is faced with a situation directly analogous to that in *Nicholas*. The court was presented with no evidence or, at the very most, insufficient evidence to show that Mr. Lee misappropriated any funds for his own use. Indeed Mr. Lee presented evidence and testimony of estimates, varying from day to day as the Lampmans added upgrades, showing that total construction costs on the house would range from $83,000 to in excess of $86,000. *See* Ex.D–7.

## CONCLUSION

For two reasons, the Lampmans' claim against Mr. Lee must be denied. First, the Lampmans are not beneficiaries under the trust fund statute under which they claim recovery. Second, from the testimony and evidence before it, the court cannot find that trust funds were diverted at all, much less intentionally or knowingly. Therefore, the court finds that any debt of Mr. Lee to the Lampmans is dischargeable.

ORDER ACCORDINGLY.[5]

---

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R. BANKR. P. 7052 which is made applicable to Contested Matters by FED. R. BANKR. P. 9014. This Memorandum will be published.