# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 2, 2009

Charles R. Fulbruge III
Clerk

No. 09-20061
Summary Calendar

In the Matter of: DONALD L SWOR, deceased; MYRA L SWOR,

    Debtors

---

MYRA L SWOR

                  Appellant

v.

BARTLEY TEXAS BUILDERS HARDWARE INC,

                  Appellee

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-644

---

Before JONES, Chief Judge, and DENNIS and HAYNES, Circuit Judges.

EDITH H. JONES, Chief Judge:[*]

    Bartley Texas Builders Hardware, Inc. ("Bartley") objected to the discharge of a debt in Donald and Myra Swor's ("the Swors") Chapter 7

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

bankruptcy case because the Swors impermissibly diverted their business's trust funds to themselves. The bankruptcy court ruled that the debt was dischargeable, finding that the Swors were allowed to repay loans they made to the business. The district court reversed, concluding that this repayment was not a valid use of trust funds.

We agree with the district court that the diversion of trust funds in this manner would render the debt nondischargeable. But because the account from which the payments were made included both trust and non-trust funds (as allowed under Texas law), it is unclear whether Bartley met its burden to trace the payments to trust funds. We therefore reverse the decision of the district court and remand for this determination and further appropriate proceedings.

## I. BACKGROUND

Swor's Glass & Mirror, Inc. ("Swor's Glass"), the debtors' small business, filed for chapter 11 bankruptcy (later converted to chapter 7) in October 2005. The Swors later filed a voluntary chapter 7 petition to discharge their personal debts, which included Donald Swor's guarantee of the business's debts.

It is undisputed that the Swors made exemplary efforts involving personal sacrifice to maintain the business. The bankruptcy court described these:

> Mrs. Swor testified that once Swor's Glass began having financial difficulty, in order to continue operating the business, she and her husband infused over $106,000 of their personal funds into the business. They refinanced their home, cashed in life insurance policies, and Mr. Swor sold a small plane he owned. The funds from all of these sources were put into the business in order to maintain operations and attempt to avoid having to file bankruptcy.
>
> . . .
>
> The Swors honorably ran their business for over thirty years, devoted all of their energy into maintaining their business and trying to provide for their employees. Although [the Swors] invested their life savings into the business, took meager salaries, and lived

modestly, late in their lives they were unable to continue operating Swor's Glass successfully.

During this period of the business's financial difficulty, however, the Swors wrote checks to themselves from corporate accounts.

When Swor's Glass entered bankruptcy, it owed $8,883.08 to Bartley for commercial construction hardware. Although Swor's Glass received payment for construction projects on which the hardware was used, no funds remained to pay Bartley. Bartley argues that this debt is non-dischargeable in bankruptcy because of the payments the Swors made to themselves.

The bankruptcy court found the debt dischargeable. It apparently determined that the infusions of money by the Swors to Swor's Glass were loans and that the checks to the Swors constituted repayment. Based on this factual determination, the bankruptcy court reached the legal conclusion that the funds received on the projects upon which Bartley supplied materials were not misapplied by the Swors.

On appeal, the district court reversed the bankruptcy court, finding that the Swors did not loan money to the business but instead made capital contributions. It then held that the Swors improperly paid themselves with money they held in trust for Bartley, and these actions rendered the debt non-dischargeable.

Before this court, Mrs. Swor argues: (1) The repayment of the loans they made to the company was an ordinary business expense of the company and thus a legitimate use of trust funds, and (2) even if impermissible, Bartley failed to meet its burden to show that the payments were made using trust funds.

## II. ANALYSIS

This court reviews a bankruptcy court's application of the law *de novo* and its findings of fact for clear error. *Richmond Leasing Co. v. Capital Branch, N.A.*, 762 F.2d 1303, 1307–08 (5th Cir. 1985).

3

Section 523(a)(4) of the Bankruptcy Code exempts certain debts from discharge: "A discharge . . . does not discharge an individual debtor from any debt—for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Defalcation includes the failure to produce funds entrusted to a fiduciary, even where such conduct does not reach the level of fraud. *See In re Faulkner*, 213 B.R. 660, 664 (Bankr. W.D. Tex. 1997).

The Texas Property Code requires, "Construction payments are trust funds . . . if the payments are made to a contractor . . . under a construction contract for the improvement of specific real property in this state." TEX. PROP. CODE § 162.001(a). The contractor holds these construction payments in trust for the benefit of the materialmen that furnished construction material. TEX. PROP. CODE §§ 162.002–003. The Fifth Circuit has determined that violation of this trust can result in non-dischargeability under § 523(a)(4). *In re Nicholas*, 956 F.2d 110, 112–14 (5th Cir. 1992).

Texas law does not require trust funds to be kept in separate accounts. *In re Boyle*, 819 F.2d 583, 592 (5th Cir. 1987). Nor must these funds be spent only on the project for which they were received—they may be spent on other projects or on expenses related to general business overhead. *Id.* Mrs. Swor does not dispute that they held the payment in trust for Bartley or that if impermissible payments were made using trust funds, § 523(a)(4) would render the debt to Bartley non-dischargeable.

*Permissibility of Payments to the Swors*

Although Mrs. Swor characterizes the funds they infused into the business as loans and the checks as repayment, the district court correctly treated money provided to the business as capital contributions:

> A loan is a capital contribution when payments correlate with the debtor's sense of his own financial situation and the debtor

repays the money at his own discretion. The Swors had to show the court—an objective outsider—that they were debtors of their company, not just unwise investors.

The Swors cannot prove debt. The absence of either documentation of the loan or interest payments indicates capital rather than debt. The Swors never had its company issue a promissory note for the loan nor did they enable the company to pay interest regularly to them.

We agree with the district court that the bankruptcy court clearly erred in its conclusion that the Swors had loaned money to Swor's Glass.

Withdrawing capital from a business is not a permissible use of trust funds. *See* TEX. PROP. CODE § 162.031(a) ("A trustee who, intentionally or knowingly or with intent to defraud, . . . diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds."); *In re Faulkner*, 213 B.R. at 665("[I]f the funds in question were retained, used, or diverted to any use other than 'actual expenses directly related to the construction or repair of [an] improvement,' then they will be held to have been 'misapplied' in a fashion that is actionable under section 523(a)(4)." (alteration in original) (*quoting* TEX. PROP. CODE § 162.031(b)).

*Use of Trust Funds*

The only remaining question is whether the funds with which the Swors paid themselves were trust funds. Neither the bankruptcy court nor the district court made any factual findings on this point.

Bartley quotes *Moody v. Pitts*, 708 S.W.2d 930 (Tex. App.—Corpus Christi, 1986, no writ), for the proposition that tracing is unnecessary: "If a trustee commingles trust funds with the trustee's own, the entire commingled fund is subject to the trust." *Id.* at 937. While this appears correct where trust funds have been improperly mingled with non-trust funds, Texas law permits

contractors the mingling that occurred here. *In re Boyle*, 819 F.2d 583, 592 (5th Cir. 1987) ("[T]he Texas statute . . . does not require any segregation of funds; it does not obligate the fund holder to maintain the separate identity of any trust res; it imposes no bookkeeping obligations on the fund holder."); *cf.* TEX. PROP. CODE § 162.006(a) ("A contractor who enters into a written contract with a property owner to construct improvements to a residential homestead for an amount exceeding $5,000 shall deposit the trust funds in a construction account in a financial institution.").

Where the law unambiguously permits trust and non-trust funds to mingle, the trustee will not be punished by merging the full amount into the trust. Bartley, therefore, bore the burden to show that trust funds were misused, causing the debt to fall within the § 523(a)(4) exception. *See In re Nicholas*, 956 F.2d 110 (5th Cir. 1992).

Tracing payments from a blended account back to trust or non-trust deposits is greatly aided by the presumption that "[w]hen a trustee has commingled funds and has expended funds, the money expended is presumed to be the trustee's own." *Moody*, 708 S.W.2d at 937. Applying this presumption, one possible method of tracing is the "lowest intermediate balance" test. *See* 5 Collier on Bankruptcy, ¶ 541.11 (15th ed. rev. 2008). Under this approach, the amount of trust funds in a commingled account increases whenever trust funds are deposited but decreases only when the account balance drops below the trust amount.

The district court correctly reversed the bankruptcy court's finding that the Swors' payments to themselves constituted permissible use of trust funds. But the payments came from an account mingling trust funds with non-trust

funds, and neither court analyzed whether the payments were made with trust funds.[1]

## III. CONCLUSION

For the foregoing reasons, we reverse the district court's judgment that the debt is non-dischargeable and remand for determination whether the Swors paid themselves out of trust funds, and for further appropriate proceedings.

**REVERSED AND REMANDED**.

---

[1] To the extent Mrs. Swor is arguing that there was no evidence on the use of trust funds, we conclude that Bartley did provide some evidence on this subject. Mrs. Swor testified about her accounts, and the court admitted exhibits, such as Defendant's Exhibit 6, regarding the accounts.