# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2016

Lyle W. Cayce
Clerk

No. 15-51085

In the Matter of:  MARTHA L. MONACO; ADAM L. MONACO;
HOPE ELAINE MONACO,

> Debtors

ADAM L. MONACO,

> Appellant

v.

TAG INVESTMENTS, LIMITED,

> Appellee

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, DAVIS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This appeal arises out of a construction contract gone awry and subsequently complicated by bankruptcy.  The district court opinion held that Monaco individually owes TAG Investments, Ltd. ("TAG") $171,942.03, a non-dischargeable debt under bankruptcy law (11 U.S.C. § 523(a)(4)) arising from the Texas Construction Trust Fund Act ("CTFA"), Tex. Prop. Code Ann. § 162.001.  Monaco appeals on several bases, most notably for our purposes

No. 15-51085

relying on the affirmative defense built into the CTFA (§ 162.031(b)).  Based on that defense, we reverse and remand with directions to discharge the debt.

## BACKGROUND

In 2004, TAG entered into a stipulated sum contract with Buildings by Monaco, Inc. ("BBM").  The contract called for the construction of a luxury home in San Antonio, Texas.  BBM served as the general contractor on the project and the contract called for progress payments which required BBM to submit an application to the architect for approval and swear that all subcontractors and supplies had been paid and lien releases had been obtained.

Despite BBM's certifications, TAG began to receive lien notices from BBM's subcontractors and suppliers in 2005 and fired BBM.  At that time, TAG had paid BBM $1,783,662.40, and BBM had dispensed $1,600,377.78 to its subcontractors and suppliers.

TAG hired a new contractor, San Antonio Realease Management, Inc. ("SARMECO"), to assume BBM's subcontracts and to pay off the liens.  TAG then reimbursed SARMECO in the amount of $171,942.03, and TAG demanded payment from BBM.

Four years later, Monaco individually and BBM filed Chapter 7 bankruptcy cases. Neither had paid TAG the $171,942.03 that TAG had paid SARMECO and that TAG believed it was due.  TAG filed an adversary proceeding against Monaco for his misapplication of trust funds, Tex. Prop. Code Ann. § 162.031 (extending liability to officers of the "trustee"), and alleged that the debt Monaco owed was nondischargeable under 11 U.S.C. § 523(a)(4), which excepts from discharge debts for "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."   The bankruptcy court agreed and rendered judgment in favor of TAG and against Monaco in the amount of $171,942.03.

No. 15-51085

On appeal, the district court initially vacated the bankruptcy court's judgment and remanded the case with instructions to address: (1) whether TAG has standing to recover for payments made by SARMECO; (2) if so, whether Monaco is entitled to a setoff for amounts withheld as retainage; and (3) the basis for the calculation of actual damages owed to TAG.  On remand, the bankruptcy court concluded that TAG has standing, via equitable subrogation, to recover for payments made by SARMECO and that Monaco is not entitled to a setoff for amounts withheld as retainage, and it clarified the debt calculation.  The district court then affirmed the bankruptcy court's judgment on October 21, 2015.

On appeal, Monaco raises several issues.  He disputes that the CTFA authorizes TAG's standing via equitable subrogation and complains that TAG's recovery would violate the one satisfaction rule. Monaco contends he did not violate the CTFA, but in any event, CTFA § 162.031(b) provides an affirmative defense that relieves Monaco of the judgment.  Because we hold that the affirmative defense is applicable in this case, we need not rule on the other three bases for Monaco's appeal.

## STANDARD OF REVIEW

We review *de novo* a district court's decision affirming a bankruptcy court's application of the law and review its findings of fact for clear error. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1307–08 (5th Cir.1985).

## DISCUSSION

The CTFA holds liable any "trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds." Tex.

3

No. 15-51085

Prop. Code Ann. § 162.031(a).  The bankruptcy court concluded that "Monaco acted intentionally to obtain further payments from TAG despite not paying the subcontractors and suppliers in violation of the CTFA."  *In re Monaco*, 514 B.R. 477, 481 (Bankr. W.D. Tex. 2014).

Monaco contests this conclusion, arguing that both the bankruptcy court and the district court misinterpreted the certifications he attested to as a condition of payment.  We need not determine whether the lower courts erred on this issue, as the statutory scheme of the CTFA also contains two affirmative defenses, one of which resolves the present case.

Section 162.031(b) of the CTFA holds that "[i]t is an affirmative defense to prosecution or other action . . . that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement." Tex. Prop. Code Ann. § 162.031(b).  This affirmative defense raises two questions: (1) were the activities Monaco claims to have spent the money on within the scope of the affirmative defense, and (2) has TAG made a sufficient showing that Monaco is not eligible for the affirmative defense?

First, however, we briefly address the absence of any discussion of the affirmative defense in the bankruptcy court or district court opinions.  Despite not appearing in the district court's opinion, both parties briefed the issue before that court.  Brief of Appellant at 4-5, *Adam Monaco v. TAG Investments, LTD,* No. SA-14-CA-882 (W.D. Tex. 2015) ("The evidence shows that BBM not only spent every cent it received for third-party expenses, salaries, overhead and supervision on the project, but also used approximately $70,000.00 of its profit to pay for expenses incurred on the project."); Brief of Appellee at 4-5, *Adam Monaco v. TAG Investments, LTD,* No. SA-14-CA-882 (W.D. Tex. 2015) ("Overhead and profit components of draws are not authorized exceptions

4

under § 162.031 of the Act, and are not a basis for offset."); Appellant's Reply Brief at 2-7, *Adam Monaco v. TAG Investments, LTD,* No. SA-14-CA-882 (W.D. Tex. 2015) ("However, [TAG] insists that the $124,053 paid as salaries and overhead . . . and the $77,776 paid as contractual profits to BBM were improper and constituted defalcation on the part of Adam Monaco").

Further, Monaco raised it from the very beginning before the bankruptcy court in 2011, when TAG first filed an objection to the discharge of its debt. *TAG Investments, Ltd v. Martha L. Monaco, et al.*, No. 10-05026 (Bankr. W.D. Tex. Nov. 23, 2011), ECF No. 52 at ¶ 7 ("Under Fifth Circuit case of *In re Nicholas* . . . there is no liability imposed on a Contractor if he uses all the monies to pay actual expenses directly related to the construction of the project, whether or not such expenses were owed to 'beneficiaries' of the trust fund."). As this argument has been properly preserved and raised, we may address it on appeal.

Turning to the scope of the affirmative defense, this court's precedent on what qualifies for "trustee's actual expenses" under the statute's affirmative defense is clear. "Under the affirmative defense to the Texas Construction Trust Fund Statute . . . general contractors may use the payments they receive from construction projects to keep those projects going even if, in some instances, the beneficiaries are not paid first." *In re Nicholas*, 956 F.2d 110, 113 (5th Cir. 1992). This includes payment of "expenses such as telephone bills, salaries, and other overhead." *In re Pledger*, 592 F. App'x 296, 302 (5th Cir. 2015).[1] *Nicholas* explains that "the Texas statute's affirmative defense for

---

[1] See also *In re Swor,* 347 F. App'x 113, 116 (5th Cir. 2009) ("Nor must these funds be spent only on the project for which they were received—they may be spent on other projects or on expenses related to general business overhead."). We cite unpublished opinions in this decision not because they are precedential, which they are not, see 5th Cir. Local Rule 47.5.4, but to show the consistency of our dispositions.

payment of actual expenses directly related to the construction or improvement of the project is . . . open-ended." *Nicholas*, 956 F.2d at 113. *See also Holladay v. CW&A, Inc.,* 60 S.W.3d 243, 248 (Tex. Civ. App—Corpus Christi 2001, pet. denied). Monaco could assert the affirmative defense for overhead costs of the project.

TAG requests instead that we rely on a bankruptcy decision holding that "[t]he affirmative defense at section 162.031(b) for 'actual expenses directly related to the construction or repair of the improvement' is limited to costs actually and directly tied to the improvement in question and does not include 'indirect' expenses, such as overhead to the contractor in question, or 'profit' built into the job's price." *In re Coley*, 354 B.R. 813, 816 (Bankr. N.D. Tex. 2006) (quoting *In re Faulkner,* 213 B.R. 660 (Bankr.W.D.Tex.1997)). *In re Faulkner*, another bankruptcy court decision, engages in statutory interpretation, looking at legislative history and Attorney General Opinion JM-945 (1988), but its ruling on this point is dicta: "[b]ecause we find that the defendant lacked the requisite level of 'mental culpability' to trigger liability for purposes of section 523(a)(4), we need not decide whether the defendant could make out a successful defense to liability under section 162.031(b) of the state statute." *Faulkner*, 213 B.R. at 667. What is dispositive, however, is that *Coley* postdates *Nicholas* and directly conflicts with this court's jurisprudence interpreting the affirmative defense.

Monaco explains that $124,053.00 went to salaries and overhead and an additional $50,400.00 went to supervision of this project. Tellingly, payment of these sums as reasonable was approved by TAG's architect. These are expenses allowable under our precedents and qualify as a "trustee's actual expenses directly related to the construction or repair of the improvement," as

No. 15-51085

required by the affirmative defense under the CTFA.  Tex. Prop. Code Ann. § 162.031(b).

Moreover, TAG had the burden to prove that Monaco misapplied the funds.  *Nicholas*, 956 F.2d at 114 ("[A]lthough initially requiring the debtor to make a prima facie showing that he is entitled to a discharge, [federal law] ultimately places the burden on the creditor to prove that the debt falls within the § 523(a)(4) exception.").  Simply showing that the progress payment certifications were false is insufficient to overcome the affirmative defense. "Because the Texas statute permits application of trust fund receipts for 'actual expenses directly related' to the project, . . . a beneficiary seeking to avail itself of § 523(a)(4) must adduce some evidence that funds were misapplied under this test." *Nicholas*, 956 F.2d at 114.  TAG was unable to show that the funds received by BBM were spent on impermissible expenses under the CTFA.

For the foregoing reasons, Monaco should not have been held liable for misapplication of construction trust funds under the CTFA and the debt claimed by TAG should have been discharged.  The judgment of the lower courts holding the debt nondischargeable is **REVERSED** and we **REMAND** with directions to discharge.